FILED'09 MAR 02 09:04USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNETH LARSON and AMEETA LARSON,    )
                                     )
              Plaintiffs,            )        Civil No. 08-929-JO
                                     )
         v.                          )        OPINION AND ORDER
                                     )
PROVIDENCE HEALTH PLAN, an Oregon    )
non-profit corporation; ET AL.,      )
                                     )
              Defendants.            )

    Kevin V. Harker
    VIAL FOTHERINGHAM, LLP
    7000 S.W. Varns Street
    Portland, OR 97223

      Attorney for Plaintiffs

    Arden J. Olson
    HARRANG LONG GARY RUDNICK, PC
    360 E. 10th Avenue, Suite 300
    Eugene, OR 97401-3273

      Attorney for Defendants

JONES, Judge:

Plaintiffs Kenneth and Ameeta Larson bring this action against defendants Providence Health Plan, Providence Health System-Oregon, and Providence Health System, alleged to be an assumed business name of Providence Health System-Oregon (together, "defendants"), seeking a declaration of coverage under an ERISA[1] health benefit plan.

This action is now before the court on defendants' motion (# 5) for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendants move for judgment on two issues. First, defendants challenge the validity of plaintiffs' first claim for relief (ERISA claim),[2] and second, defendants contend that Providence Health System-Oregon ("PHS-O") is not a proper party to this litigation. For the reasons explained below, I deny defendants' motion for judgment on plaintiffs' ERISA claim, and grant defendants' motion with respect to defendant Providence Health System-Oregon.

BACKGROUND

Ameeta and Kenneth Larson are married, and Ameeta Larson is an employee of Columbia Sportswear. Columbia Sportswear maintains an ERISA health plan for its employees, which is administered by defendant Providence Health Plan ("Providence"). Kenneth Larson ("Larson") is covered under his wife's health insurance plan.

---

[1]     Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

[2]     According to defendants, plaintiffs have agreed to dismiss two state law claims, breach of contract and breach of the covenant of good faith and fair dealing, as preempted by ERISA.

Larson was diagnosed with malocclusion of the jaw in 2006.[3]  Although his condition was discovered recently, Larson has had the condition since birth and it is classified as a "congenital disease."  Complaint, ¶ 10.  Larson requested insurance coverage for corrective surgery to remedy his jaw deformity, but on July 18, 2007, Providence denied his request.  Complaint, ¶ 11.  Larson then followed the grievance and appeal procedures outlined in the health plan, but the denial was upheld.  Complaint, ¶ 12.

After exhausting the internal appeal procedures, Larson elected to submit his claim to an independent external review organization ("IRO") under the health plan procedures.  His claim was assigned to HCE Quality Quest ("HCE"), which after conducting an independent review, notified Larson that it had determined that Providence properly denied his claim.  Complaint, ¶13.  On August 8, 2008, plaintiffs filed this action seeking declaratory relief, damages to cover the cost of corrective jaw surgery, future benefits payable under the health plan, and an award of reasonable attorney fees and costs.

## STANDARDS

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  For purposes of a motion for judgment on the pleadings, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citing

---

[3]    Malocclusion of the jaw is a jaw deformity that causes degeneration of the functionality and condition of the jaw joint and premature wear of the teeth.  Larson alleges that his condition has impaired his ability to chew and swallow so much that it causes him severe pain when he eats.  Complaint, ¶ 10.

Doleman v. Meiji Mutual Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984)).  Judgment on the

pleadings is proper "when the moving party clearly establishes that no material issue of fact

remains to be resolved and that it is entitled to judgment as a matter of law."  Id.  Documents

attached to the complaint and incorporated by reference are treated as part of the complaint, not

as extrinsic evidence, and may properly be considered on a Rule 12(c) motion.  Voest-Alpine

Training USA Corp. v. Bank of China, 142 F.3d 887, 891, fn. 4 (5th Cir. 1998).

DISCUSSION

I.    Motion for Judgment on Plaintiffs' ERISA Claim

Defendants assert that plaintiffs' first claim, to enforce their rights under the terms of the

ERISA health plan, should be dismissed because plaintiffs' voluntary election to submit their

claim to the IRO constituted a binding agreement to arbitrate under the Federal Arbitration Act

("FAA"), 9 U.S.C. § 2.  Defendants also contend that plaintiffs are equitably estopped from

claiming they are not bound by the IRO's decision.

A.    The Providence Health Plan External Review Provisions

Oregon law mandates that insurers that offer health benefit plans in Oregon "shall have an

external review program that meets the requirements [set by statute]."  ORS 743.857.  Each

insurer "shall provide the external review through an independent review organization," such as

HCE.  Id.  ORS 743.859 requires insurers to include certain statements concerning external

review in the health plan.  As pertinent to this case, the statute requires the following:

>     (1)    An insurer of a health benefit plan shall include in the plan the
> following statements, in boldfaced type or otherwise emphasized:
>
>     (a)    A statement of the right of enrollees to apply for external review by
> an independent review organization; and

4 - OPINION AND ORDER

(b)    A statement of whether the insurer agrees to be bound by decisions of independent review organizations.

\* \* \*

(3)    If an insurer states in the health benefit plan as provided in subsection (1) of this section that the insurer is bound by the decisions of the independent review organization, the plan must prominently disclose that fact. The plan must also state that the insurer agrees to act in accordance with the decision of the independent review organization notwithstanding the definition of medical necessity in the plan.

ORS 743.859(1) and (3). Subsection (2) of the statute describes the language required should an insurer choose **not** to be bound by the decisions of the independent review organizations, and in that case, specifically requires a statement notifying the enrollee that "[i]f the insurer does not follow a decision of an independent review organization, the enrollee has the right to sue the insurer." ORS 743.859(2)(c).

In this case, Providence elected to be bound by the decisions of the independent review organizations, and thus included the following statement in the health benefit plan:

**External Review:**    If you are not satisfied with the decision of the Grievance Committee and your appeal involves a denial of services because they are not medically necessary, not an active course of treatment for purposes of continuity of care, or because they are experimental/investigational, you may request an external review by an [IRO]. \* \* \* When the external review process is begun, an IRO will be assigned to the case by the Oregon Insurance Division and we will forward complete documentation regarding the case to the IRO. The IRO is entirely independent of Providence Health Plan and performs its review under a contract with the Oregon Insurance Division. The IRO will notify you and us of its decision. <u>We agree to be bound by and comply with the IRO decision when the decision involves, (a) medically necessary treatment, (b) experimental/investigational treatment, or (c) an active course of treatment for purposes of continuity of care.</u> All costs for handling of external review cases are paid by us and we administer these provisions in accordance with the insurance laws and regulations of the State of Oregon.

Answer to the Complaint, Exhibit 1, p. 2 (emphasis added).[4]

    B.    The Parties' Arguments

Defendants contend, in essence, that plaintiffs' voluntary election to submit their claim to

the IRO constituted an agreement to arbitrate under the FAA. Defendants assert that the absence

of words such as "arbitration" and "arbitrator" in the external review provisions is not

determinative, and contend that because the external review process involved elements of

arbitration (i.e., an agreement between the parties to submit their dispute to a neutral third-party

for determination), it constituted arbitration.

Plaintiffs, in turn, deny that the external review constituted arbitration. Plaintiffs reason

that: (1) they did not enter into an arbitration agreement, because they did not agree to be bound

by the IRO's decision; (2) nothing in the health plan contract identified the external review as

arbitration; (3) the external review process lacked other necessary hallmarks of arbitration; (4)

the external review process was imposed by statute and is not, therefore, a "creature of contract"

and a "device of the parties," which are necessary elements of arbitration; and (5) the external

review process was not intended to replace litigation, because plaintiffs could have brought suit

at any time.

    C.    Analysis

    1.    Did Providence's External Review Process Constitute Binding Arbitration?

Rush Prudential HMO, Inc. v. Moran, 563 U.S. 355 (2002), and Hawaii Mgmt. Alliance

Ass'n v. Ins. Comm'r, 106 Hawai`i 21, 100 P.3d 952 (2004), offer insight as to whether  the

---

    [4]    It is possible that the underscored language is bold in the original, but that cannot
be determined from the Exhibit.

6 - OPINION AND ORDER

Providence Health Plan external review process should be construed as arbitration. Both cases involved ERISA preemption challenges against health plan-related, external review systems established by state law (Illinois law in Rush Prudential and Hawai'i law in Hawaii Mgmt. Alliance). See Rush Prudential, 563 U.S. at 359-64; Hawaii Mgmt. Alliance, 100 P.3d at 954. In determining the nature of the external review systems, both courts considered whether they constituted arbitration, and both concluded they did not. Rush Prudential, 563 U.S. at 382-84; Hawaii Mgmt. Alliance, 100 P.3d at 963, 966.

In describing arbitration, the Court in Rush Prudential made the following observations:

> In the classic sense, arbitration occurs when parties in dispute choose a judge to render a final and binding decision on the merits of the controversy and on the basis of proofs presented by the parties. * * * Arbitrators typically hold hearings at which parties may submit evidence and conduct cross-examinations, . . . and are often invested with many powers over the dispute and the parties, including the power to subpoena witnesses and administer oaths. . . .

Rush Prudential, 536 U.S. at 382 (citations omitted).

The Court acknowledged that some aspects of the Illinois independent review system resembled arbitration -- "to the extent that the independent reviewer considers disputes about the meaning of the HMO contract and receives 'evidence' in the form of medical records, statements from physicians, and the like" -- but concluded that the Illinois law was not equivalent to arbitration, because it lacked essential hallmarks of arbitration. Id. at 382-83. Specifically, the Illinois law did not give the independent reviewer "free-ranging power to construe contract terms, but instead, confine[d] review to [the] single term . . . [of] 'medical necessity'"; the independent reviewer must be a physician expected to exercise independent medical judgment in deciding what medical necessity requires; the independent reviewer "did not hold the kind of conventional

7 - OPINION AND ORDER

evidentiary hearing common in arbitration"; and the process "does not resemble either contract
interpretation or evidentiary litigation before a neutral arbiter, as much as it looks like a practice
(having nothing to do with arbitration) of obtaining another medical opinion." Id. at 383; see
also Hawaii Mgmt. Alliance, 100 P.3d at 963, 966 (applying Rush Prudential, court found that
even though the Hawai`i process more closely resembled arbitration than the Illinois process, the
Hawai`i process did not constitute arbitration).

For reasons similar to those articulated in Rush Prudential, I find that Providence's
independent external review process does not constitute arbitration. The process, which is not a
creature of contract but rather is imposed by law, does not involve a conventional evidentiary
hearing complete with witnesses and argument. Instead, the IRO decision "shall be based" on
expert medical judgment "after consideration of the enrollee's medical record, the
recommendations of each of the enrollee's providers, relevant medical, scientific and cost-
effectiveness evidence and standards of medical practice in the United States," "in accordance
with the coverage described in the health benefit plan . . . ." ORS 743.862(2). As with the
Illinois process examined in Rush Prudential, the Oregon process and Providence's application of
it more closely resembles the notion of obtaining a second medical opinion. Rush Prudential,
536 U.S. at 383.

8 - OPINION AND ORDER

In short, I conclude that Providence's independent external review process does not constitute arbitration and is not subject to the FAA.[5] Therefore, plaintiffs' submission of their dispute to the IRO did not constitute a binding agreement to arbitrate.

2.    Are Plaintiffs Otherwise Bound by the IRO Decision?

Providence proffers two interrelated arguments as to why plaintiffs are bound by the unfavorable IRO decision. First, Providence contends that because it agreed to be bound by the IRO decision, plaintiffs' voluntary submission to the IRO likewise bound them to the IRO decision. In a corollary argument, Providence asserts that plaintiffs should be equitably estopped from claiming that they are not bound.

Nothing in the plain language of the Providence Health Plan notifies plaintiffs that if they invoke the external review process, they will be bound by the IRO decision. Providence's external review provision contains only that language permitted or required by the Oregon statutory scheme. The plain language of the statutory scheme **suggests**, but does not explicitly provide, that if an insurer agrees to be bound by the external review decision, the enrollee has no private right of action. See ORS 743.864(1)(a) (enrollee has a private right of action against the insurer "**if** . . . [t]he insurer states in the health benefit plan . . . that the insurer is not bound")(emphasis added). And given the strength of the insurance industry, one could question why an insurer would agree to be bound by a decision if it can be sued for damages whether it agrees to bound or not.

_____

[5]    Of course, if the Oregon review process too closely resembled arbitration, it likely would be preempted by ERISA's civil enforcement provisions as it would create an impermissible new cause of action under state law. Rush Prudential HMO, Inc. v. Moran, 563 U.S.355, 379, 381-85 (2002).

Nonetheless, it is not this court's role to read into a statute language that is not there; nor is it the court's role to rewrite the Providence health benefit plan. Both are silent concerning any binding effect the IRO process has on enrollees, and in view of that silence, the court declines to equitably estop plaintiffs from challenging the IRO decision, at least in the context of the present motion. Consequently, defendants' motion for judgment on the pleadings as to plaintiffs' first claim is denied.

II.    Motion for Judgment as to Defendant PHS-O

Defendants assert that PHS-O is not a proper party defendant in plaintiffs' claim for benefits under ERISA section 1132(a)(1)(B), because PHS-O is neither the health plan itself nor a plan administrator. Plaintiffs have not responded to this argument.

Because this is a motion for judgment on the pleadings, I restrict my review to the complaint and other documents properly before me. As defendants point out, plaintiffs' complaint does not allege that PHS-O is the health plan or a plan administrator.

ERISA authorizes actions to recover benefits against a plan as an entity, 29 U.S.C. § 1132(d)(1), and against the plan's administrator. See 29 U.S.C. § 1132(a)(1)(B); see also Ford v. MCI Communications Corp. Health and Welfare, 399 F.3d 1076, 1081 (9th Cir. 2005). In Ford, the Ninth Circuit confirmed that these are the only proper defendants in a section 1132(a)(1)(B) action, and specifically rejected the argument that ERISA claimants may sue the plan's insurer or others who may have "controlled the administration of the plan and made discretionary decisions as to whether benefits were owed." Ford, 399 F.3d at 1081-82.

I conclude, therefore, that defendants' motion for judgment on the pleadings as to defendant PHS-O should be granted. If, however, plaintiffs can allege in good faith that

defendant PHS-O is or was a plan administrator,[6] they may file an amended complaint with the appropriate allegations within 20 days.

CONCLUSION

For the above reasons, defendants' motion (# 5) for judgment on the pleadings is granted with respect to defendant PHS-O and denied as to plaintiffs' claim for ERISA benefits.

DATED this 2d day of ~~February~~ *March*, 2009.


ROBERT E. JONES
U.S. District Judge

---

[6]       The "plan administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated[.]"  29 U.S.C. § 1002(16)(A)(i).