IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KENNETH LARSON and AMEETA LARSON, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 08-929-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| PROVIDENCE HEALTH PLAN, an Oregon non-profit corporation; ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

Kevin V. Harker
VIAL FOTHERINGHAM, LLP
7000 S.W. Varns Street
Portland, OR 97223

   Attorney for Plaintiffs

Arden J. Olson
HARRANG LONG GARY RUDNICK, PC
360 E. 10th Avenue, Suite 300
Eugene, OR 97401-3273

John A. Riherd
HARRANG LONG GARY RUDNICK PC
1001 SW Fifth Avenue, 16th Floor
Portland , OR 97204

   Attorney for Defendants

JONES, Judge:

Plaintiffs Kenneth and Ameeta Larson bring this action against defendants Providence Health Plan, Providence Health System-Oregon, and Providence Health System, alleged to be an assumed business name of Providence Health System-Oregon,[1] seeking a declaration of coverage under an ERISA[2] health benefit plan.

This action is now before the court on Providence Health Plan's ("Providence") amended motion (# 24) for summary judgment and plaintiffs' motion (# 25) for summary judgment. For the reasons explained below, I GRANT Providence's motion and DENY plaintiffs' motion.

BACKGROUND

Ameeta and Kenneth Larson are married, and Ameeta Larson is an employee of Columbia Sportswear. Columbia Sportswear maintains an ERISA health plan for its employees, which is administered by Providence. Kenneth Larson ("Larson") is covered under his wife's health insurance plan.

Plaintiffs allege that Larson was diagnosed with malocclusion of the jaw in 2006.[3] Although his condition was discovered recently, Larson has had the condition since birth.

---

[1]  I dismissed Providence Health System-Oregon as a defendant on March 2, 2009 (# 17).

[2]  Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.

[3]  Plaintiffs failed to comply with the requirement of L.R. 56(a)(2) that a motion for summary judgment be accompanied by a separate concise statement of facts; nor have plaintiffs controverted the statements in defendants' concise statement, which by Local Rule are thus deemed admitted: "For purposes of a motion for summary judgment, material facts set forth in the concise statement of the moving party, or in the response to the moving party's concise statement, will be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." L.R. 56(f). Thus, the court is left with plaintiffs' allegations, but no evidentiary facts. But see footnote 7.

2 - OPINION AND ORDER

Larson requested insurance coverage for corrective surgery to remedy his jaw deformity, but on July 18, 2007, Providence denied his request. Larson then followed the grievance and appeal procedures outlined in the health plan, but the denial was upheld.

After exhausting the internal appeal procedures, Larson elected to submit his claim to an independent external review organization ("IRO") under the health plan procedures. His claim was assigned to HCE Quality Quest ("HCE"), which after conducting an independent review, notified Larson that it had determined that Providence properly denied his claim. On August 8, 2008, plaintiffs filed this action seeking declaratory relief, damages to cover the cost of corrective jaw surgery, future benefits payable under the health plan, and an award of reasonable attorney fees and costs.

## STANDARDS

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at

3 - OPINION AND ORDER

631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party.

Id. at 630-31.

## DISCUSSION

As a preliminary matter, I must resolve a dispute between the parties concerning the

standard under which I review Providence's decision.

Plaintiffs' action is governed by ERISA's civil enforcement provision, 29 U.S.C.

§ 1132(a)(1)(B).  Under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the

court reviews a denial of benefits under a highly deferential "arbitrary and capricious" standard

where the ERISA benefit plan "gives the plan administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan."  See also Jordan v.

Northrop Grumman Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004), in which the court

explained that:

> When we review for abuse of discretion, it is because the plan has put the
> locus for decision in the plan administrator, not in the courts, so we cannot
> substitute our judgment for the administrator's.  We can set aside the
> administrator's discretionary determination only when it is arbitrary and
> capricious.  We have held that a decision "grounded on *any* reasonable basis" is
> not arbitrary or capricious, and that in order to be subject to reversal, an
> administrator's factual findings . . . must be "clearly erroneous."

(Emphasis in original; footnotes omitted.)

Plaintiffs contend that the benefit plan at issue does not grant the plan administrator

discretion to interpret ambiguous terms and that consequently ambiguous terms must be

construed against defendants.  Response to Defendant's Motion for Summary Judgment, p. 2.

Plaintiffs are incorrect.  Paragraph 14.11 of the Employer Group Contract between Providence

and Columbia Sportswear Company plainly grants Providence the relevant discretion:

> The *Employer* gives *Providence Health Plan*, acting for the "Plan Administrator," the discretionary authority to interpret the terms of the related ERISA plan, to make factual determinations relevant to benefit determinations and to otherwise decide all questions regarding eligibility for benefits under the plan.

Declaration of Mark Jensen in Support of Defendant Providence Health Plan's Motion for Summary Judgment, Exhibit 3. Consequently, the doctrine of *contra proferentem*, which plaintiffs urge me to consider, does not apply.[4]

I will, therefore, review Providence's denial of benefits for abuse of discretion under the "arbitrary and capricious" standard.

B.    Was Providence's Denial of Benefits Arbitrary and Capricious?

Plaintiffs advance two main theories as to why Providence erroneously denied Larson coverage for orthognathic surgery to correct his malocclusion of the jaw. First, plaintiffs contend that Larson's condition is covered under the terms of the plan because it is a "degenerative disease." Second, plaintiffs assert that ORS 743A.148 requires Providence to cover Larson's claim. I address these arguments in turn.

1.    Did Providence Abuse its Discretion in Determining that Coverage for Larson's Condition is Excluded by the Plan?

a.    Relevant Plan Provisions

The Providence Health Plan contains several interrelated provisions that are relevant to my decision. The plan defines "Covered Services" as follows:

---

[4]    Under the doctrine of *contra proferentem*, if a term in an insurance policy "is ambiguous it will be construed against the drafter and aligned with the reasonable expectations of the insured." E.g., Shane v. Albertson's Inc., 504 F.3d 1166, 1169 (9th Cir. 2007). In the case of an insured plan that grants the administrator discretion to construe its terms, and in the absence of proof of a conflict of interest, the doctrine does not apply. See, e.g., Lang v. Long-Term Disability Plan, 125 F.3d 794, 797-99 (9th Cir. 1997).

*Covered Service*[5] means a *Service* that is:

1.      Listed as a benefit in the *Summary of Benefits* and in sections 5 and 6;

2.      *Medically Necessary*;[6]

3.      Not listed as an exclusion in the *Summary of Benefits* or in sections 5, 6, and 7;  and

4.      Provided to *You* while *You* are a *Member* and eligible for *Service* under this *Group Contract*.

Jensen Decl., Exh. 1, p. 2.   Section 5, in turn, lists the "Covered Services" after the following

preface:

> This section describes the *Medically Necessary Services* that are covered under this *Group Contract*, as specified in the *Summary of Benefits*.
>
> Benefits for the treatment of illness . . . include the *Covered Services* that are listed in this section and section 6, and shown in the *Summary of Benefits*.
>
> See section 6 (the Limitations section) for the specific coverage provisions that apply to these *Covered Services*:
>
> - Human Organ/Tissue Transplants;
> - Restoration of Head/Facial Structures and Limited Dental Services;
> - Temporomandibular Joint (TMJ) *Services*; and
> - Surgery and anesthesia for dental *Services*.

Jensen Decl., Exh. 1, p. 22.

Section 5.9.3., one of the provisions on which plaintiffs rely, addresses Reconstructive

Surgery and provides:

---

[5]      Words in italics are defined terms under the plan.

[6]      Whether the proposed surgery qualifies as "medically necessary" is not in dispute.

> *Reconstructive Surgery* is covered for conditions resulting from trauma, infection or other diseases and for congenital deformities and anomalies if there is a resultant functional impairment.  Benefits are covered as those *Services* listed in the *Summary of Benefits* based upon the type of *Services* received.

Jensen Decl., Exh. 1, p. 28.

Section 6 of the plan specifies the "Limitations for Specified Covered Services."  <u>See</u>

<u>generally</u> Jensen Decl., Exh. 1, pp. 33-36.  As pertinent here, section 6.2 provides:

> RESTORATION OF HEAD/FACIAL STRUCTURES; LIMITED DENTAL SERVICES
>
> *Covered Services* include restoration and management of head and facial structures, including teeth, dental implants and bridges, that cannot be replaced with living tissue and that are defective because of trauma, disease or birth or developmental deformities, when *Services* are *Medically Necessary* for the purpose of controlling or eliminating pain, or restoring facial configuration or functions such as speech, swallowing or chewing.
>
> * * *
>
> Exclusions that apply to *Covered Services* include: . . . Orthognathic surgery to shorten or lengthen the upper or lower jaw, unless related to a traumatic injury or to a neoplastic or degenerative disease . . . .

Jensen Decl., Exh. 1, p. 35.

Section 7 of the plan lists specific exclusions not already addressed in sections 5 and 6,

and specifies that dental services do not include "*Services* for . . . orthognathic surgery."  Jensen

Decl., Exh. 1, p. 39.  Finally, the Summary of Benefits includes, under "general limitations and

exclusions," "Dental care, including orthognathic surgery, except as otherwise stated in your

Member Handbook."  Jensen Decl., Exh. 2, p. 2.

7 - OPINION AND ORDER

b.    Plaintiffs' Arguments Concerning Plan Provisions

The plan generically excludes coverage for orthognathic surgery.  Plaintiffs nonetheless

advance two arguments as to why the above-quoted plan provisions do not exclude his particular

claim for services.  The first of these arguments, that section 5.93 *requires* coverage for his

proposed surgery, ignores the interplay between the various provisions.  While taken out of

context, section 5.9.3 can be read to require coverage for "[r]econstructive surgery . . . for

congenital deformities and anomalies," that section must be read in conjunction with the limiting

language contained in the same paragraph, in sections 6 and 7, and in the Summary of Benefits.  I

do not accept plaintiffs' argument that section 5.9.3 requires coverage or that Providence abused

its discretion in its interpretation of that plan provision.

Plaintiffs' second argument is, in essence, that Providence abused its discretion in

concluding that his malocclusion of the jaw is not a "degenerative disease."  Providence's

explanation of the denial of benefits, which is repeated with minor variations in the Exhibits

related to the grievance procedures, explains, for example, that:

> Your employer contract excludes Orthognathic surgery to shorten or lengthen the
> upper or lower jaw, unless related to a traumatic injury or to a neoplastic or
> degenerative disease.  Examples of degenerative disease include bone infection,
> congenital bone disease or metabolic bone disease.  Jaw development would not
> be categorized as a congenital disease.  Our Medical Director reviewed the
> clinical information provided but did not find any evidence of a traumatic injury
> or a neoplastic or degenerative disease and as such surgery in your case would not
> be covered under your employer group plan.

Jensen Decl., Exh. 8; see also, e.g., Exhs. 6, 7, 9, and 10 (similar language).  According to

plaintiffs, Larson's condition "is caused by a degenerative congenital deformity," which, plaintiffs

assert, qualifies as a "degenerative disease" and to interpret the plan otherwise is arbitrary and capricious. I disagree.

Larson's oral surgeon, Dr. David Howerton, described Larson's condition in a June 2007 letter requesting confirmation of coverage. According to Dr. Howerton:

> Physical and radiographic evaluation of this patient has revealed a severe skeletal deformity, that has resulted in mandibular prognatism and maxillary hypoplasia. This has resulted in a significant functional deficit. . . . The medical necessity for this procedure is to correct the abnormal skeletal deformity of the patient's maxilla and restore normal function.

Jensen Decl., Exh. 5. In connection with his grievance, Larson submitted two additional letters from dentists Wade Haslam and R. Keith Frome. Jensen Decl., Exh. 12, pp. 4-5. Dr. Haslam described Larson's condition as "a Class III malocclusion, due to a prognathic mandible and retrognathic maxilla. He has significant enamel wear, due to the poor function of his teeth. Orthognathic surgery will be required to correct the skeletal malocclusion, and create a better balance in the occlusion." Jensen Decl., Exh. 12, p. 4. Dr. Frome stated that Larson had a "skeletal and dental malformation of the maxillary and mandibular jaws," "a severe Class III skeletal malocclusion with a significant underbite" and "a maxillary transverse discrepancy with malformed width of the maxillary hard plate." Jensen Decl., Exh. 12, p. 5. Although the dentists all predict that Larson's teeth will experience significant wear, i.e., degeneration, none describes his condition as a "degenerative disease."[7]

---

[7]    The only other "evidence" plaintiffs submit to establish that Larson suffers a degenerative disease is Larson's affidavit, filed in connection with the underlying grievance proceedings. In that affidavit, Larson states that "I suffer from a jaw condition that has resulted from a degenerative disease. My health care professionals that have reviewed my condition have indicated that my jaw condition is a result of a degenerative disease that will continue to worsen over time." Affidavit of Kenneth Larson, ¶ 2. I agree with Providence that Larson's statements

(continued...)

Thus, the question before me is whether Providence abused its discretion in determining

that Larson's congenital deformity, which is predicted to worsen, does not quality as a

"degenerative disease" within the meaning of the plan provisions.  To accept plaintiffs' theory,

that any congenital defect or deformity eventually will cause degeneration and thus qualifies as

"degenerative disease," would require coverage of conditions the plan provisions plainly were

crafted to exclude.[8]  In view of my limited role in reviewing Providence's decision, I conclude

that distinguishing a congenital skeletal deformity on the one hand, and "bone infection,

congenital bone disease or metabolic bone disease" on the other does not amount to an arbitrary

and capricious interpretation of the plan and must be upheld.

      2.     <u>Does ORS 743A.148 Require Providence to Cover Larson's Claim?</u>

Plaintiffs next contend that coverage is mandated by ORS 743A.148, which provides, in

relevant part:

> **743A.148  Maxillofacial prosthetic services.**  (1) The Legislative
> Assembly declares that all group health insurance policies providing hospital,
> medical or surgical expense benefits include coverage for maxillofacial prosthetic
> services considered necessary for adjunctive treatment.
>
>     (2)    As used in this section, "maxillofacial prosthetic services
> considered necessary for adjunctive treatment" means restoration and management
> of head and facial structures that cannot be replaced with living tissue and that are
> defective because of disease, trauma or birth and developmental deformities when
> such restoration and management are performed for the purpose of:

---

[7] (...continued)
are inadmissible.  <u>See</u> Defendant's Response to Plaintiff's Motion, p. 5 n.5.

    [8]    As Providence explained in a letter upholding the denial of coverage, "[m]any
conditions may lead to deterioration of parts of our anatomy, given time, but that alone is
insufficient as a medical matter to constitute a "degenerative disease" as that term is routinely
used in medicine."  Jensen Decl., Exh. 10, p. 2.

10 - OPINION AND ORDER

(a)    Controlling or eliminating infection;

(b)    Controlling or limiting pain; or

(c)    Restoring facial configuration or functions such as speech, swallowing or chewing but not including cosmetic procedures rendered to improve on the normal range of conditions.

Plaintiffs contend that Larson's surgery qualifies under this statute because his jaw will be "[held] in place with screws and plates" in conjunction with braces.   Plaintiffs' Response to Defendant's Motion for Summary Judgment, p. 7.  While the meaning of "prosthesis" is ambiguous, I am faced with plaintiffs' expert doctor's opinion, which states:

> Orthognathic surgery is a maxillofacial prosthetic service considered necessary for adjunctive treatment.  [The surgery] is necessary for the restoration and management of head and facial structures that cannot be replaced with living tissue.

Declaration of Dr. Howerton, p. 2 ¶ 7.

Dr. Howerton's statement tracks the language of ORS 743A.148(2), and for purposes of the present motion, it is sufficient to create a question of fact concerning the parameters of the proposed surgery.  Consequently, I must deny defendant's motion for summary judgment based solely on the statute.  I will, however, explore Dr. Howerton's opinion on this issue thoroughly in a pretrial motion in limine under Rules 104 and 702, should defendant chose to challenge it.

## CONCLUSION

Defendant's motion (# 24) for summary judgment is granted in part and denied with

respect to whether ORS 743A.148 mandates coverage.  Plaintiffs' motion (# 25) for summary

judgment is denied.

DATED this ___ day of August, 2009.

_____
ROBERT E. JONES
U.S. District Judge

12 - OPINION AND ORDER